UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | 4:06-CR-03 |
| | ) | COLLIER/CARTER |
| | ) | |
| ANDRE RASHAD SUTTON | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Andre Rashad Sutton's (Sutton) Motion to Suppress Evidence (Doc. 11) is before the undersigned having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B)&(C). The defendant was arrested after his vehicle was stopped, ostensibly for running through several stop signs, and after drugs were found on his person. The defendant asserts that the officer who stopped his vehicle lacked sufficient cause under the Fourth Amendment to do so. For the reasons stated herein, it is RECOMMENDED the defendant's motion to suppress be DENIED.

II. Relevant Facts

Tim Miller was the only witness to testify at the hearing held on the defendant's motion to suppress on Thursday, July 27, 2006. Agent Miller testified to the following: He has been employed with the Lincoln County Sheriff's Department since June 1, 2000, during which he has been assigned to the Seventeenth Judicial Drug Task Force. He has had many occasions to investigate drug trafficking and has received specialized training in drug trafficking as well as on the job training. He has talked with several hundred defendants concerning their drug trafficking

1

habits during his tenure with the Drug Task Force. On February 8, 2006, he received a telephone call from Detective Brian Cruze in Shelbyville, Tennessee, informing him that someone named Rashad was selling crack in Shelbyville, Tennessee, in the Farrar Trailer Park from a trailer located on Lot 27. Cruze also described the vehicle driven by this Rashad as a gold or light colored Mitsubishi. Several hours later, at about 5:45 pm, Miller drove to the trailer park in Shelbyville to investigate. Miller was driving a grey colored Chevy Trailblazer and testified that his vehicle was "well known" in the drug trafficking community. He drove past Lot 27 and saw the trailer but no cars in the driveway. He then turned around and began to drive out of the trailer park when he saw, coming into the trailer park, a compact red pick-up truck followed by a vehicle which matched the description of the vehicle driven by Rashad and given to him by Cruze. Trying to keep out of sight of these two vehicles, Miller continued out of the trailer park pulling onto a nearby road into a driveway where he could still observe Lot 27. He saw the pick-up truck and gold Mitsubishi park and the drivers exit their vehicles and enter the trailer. After a short time, they exited the trailer, entered their respective vehicles and drove outside the trailer park. The pick-up truck turned left outside the trailer park while the Mitsubishi turned right. Miller followed the Mitsubishi in an attempt to get a plate number. The Mitsubishi arrived at a stop sign and went straight through it without stopping. It was dark and lightly raining. The road was wet. Miller followed the Mitsubishi to another intersection where the defendant did stop and Miller was able to get the tag number which he called in to dispatch. At this intersection, the defendant turned left and sped up. Miller tried to catch up. The speed limit was 30 mph and Miller estimates they were driving 55-60 mph. Miller caught up with the Mitsubishi at another intersection where the defendant barely slowed down and jacknived a right turn through the stop

2

sign. Miller caught up with the vehicle at the next intersection where the defendant did stop at the stop sign and then made a left turn. At this point, Miller activated his blue lights. The Mitsubishi traveled .10 of a mile before turning left on Edgemont Drive and proceeding another .10 of a mile before stopping in the driveway of a house at 228 Edgemont Drive. The driver, later identified as the defendant, exited and started walking to the house. Miller picked up the microphone in his vehicle and ordered the defendant back to his car. The defendant responded that his identification was in the house. Miller had to tell him three times to go back to the car before the defendant would comply. When Miller approached the driver's side, the defendant was very nervous. The defendant told Miller his name was Andre Sutton. Miller then realized he was speaking to Andre Rashad Sutton. Miller informed the defendant he was driving too fast and ran stop signs. At Miller's request, the defendant exited his vehicle and came to the rear of his car. At this point, Officer Cody King, a patrol officer with the Shelbyville Police Department arrived. The defendant walked to the rear of his vehicle and put his hands on the car "assuming the position" without Miller's request to do so. Miller told him to turn around and face him. Miller asked him if he was on probation or parole. The defendant responded that he was on parole. Miller asked him if he was carrying any weapons. Again, without being asked to do so, the defendant turned and put his hands on the car. At this point, Miller patted him down. When he reached the left ankle, he felt and heard a cellophane wrapper crunch under his hand and could feel a hard center in the cellophane. He testified he has felt cellophane wrappers in pants, socks, and shirts before and they have always contained illegal drugs. Miller lifted the pant leg and saw the cellophane sticking out from the left sock. He pulled it out and saw what he believed to be crack in the cellophane. He placed Sutton under arrest and in handcuffs. Miller turned the

3

defendant over to Cody King who placed Sutton in the patrol car. Miller then went to the passenger's side of the Mitsubishi where Jacalyn Bowman was sitting. Miller informed Bowman that the defendant had been arrested for possession of crack and asked her if the defendant had tried to hide anything in the car and whether they could search. She gave her consent to search. Miller looked under the defendant's seat and found nothing. Officer King looked under the passenger's seat and found a Kroger bag which contained crack and powder cocaine. Miller then called his supervisor, Tim Layne, and Agent Shane George for assistance. Ms. Bowman informed Miller that Lot 27 in the Farrar Trailer Park was her trailer and Miller asked for permission to search the trailer. She said he could search the trailer. Bowman informed Miller that the defendant had been living with her for two weeks. A search was conducted and a set of digital scales and some marijuana were found in the bedroom. The defendant himself had $1,200 to $1,300 in his pocket. Bowman said the scales belonged to the defendant. Miller explained the reason he did not cite the defendant for a traffic violation was because more serious crimes were apparent. Later, Director Layne read the defendant his Miranda rights and the defendant waived those rights and made statements admitting the crack was his.

## II. Analysis

The defendant argues the evidence found on his person and in his vehicle on February 8, 2006 should be suppressed because Agent Miller did not have probable cause to stop his vehicle. When an officer "has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005), citing *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996). However, when evidence from a driver or his vehicle is seized as

4

a result of an illegal traffic stop, the evidence is "fruit of the poisonous tree" and must be suppressed. *See generally Wong Sun v. United States*, 371 U.S. 471 (1963), *see also United States v. Hill*, 195 F.3d 258 (6th Cir. 1999) 1999)(holding that if the initial traffic stop is illegal, the seized items must be excluded under the "fruits of the poisonous tree doctrine").

The defendant asserts that when Miller saw his car on February 8, 2006, based on the information given him by Det. Cruze, Miller determined a known drug suspect was driving the Mitsubishi and decided to fabricate a reason to stop the Mitsubishi. Defendant further argues that it would have made no sense for him to speed through the traffic signs with Miller's Trailblazer, a vehicle "well-known to the drug community," directly behind him.

I observed Miller carefully during his testimony and found him credible. His testimony was consistent and logical, and I have found no reason to discredit Miller's testimony. The fact that Miller may have suspected a drug dealer was in the Mitsubishi does not, in my mind, diminish Miller's credibility. Miller had reason to believe a drug trafficker might be in the Mitsubishi. He decided to follow him. During the course of this surveillance, the defendant ran through two stop signs and exceeded the speed limit. If the defendant did recognize Miller's Trailerblazer following behind him in the drizzling rain and dark with headlights shining into the back windshield, the defendant may have been trying to evade Miller, as Miller testified he thought the defendant was doing. Because I find Miller credible, I conclude the defendant did run the stop signs and exceed the speed limit, and Miller had probable cause to stop him. Thus, Miller's stop of the defendant for traffic violations was lawful and well within Fourth Amendment boundaries.

5

Case 4:06-cr-00003-HSM-WBC   Document 31   Filed 08/24/06   Page 5 of 6   PageID #: 5

IV. Conclusion

For the reasons stated herein, it is RECOMMENDED defendant's motion to suppress be DENIED.[1]

        s/William B. Mitchell Carter
        UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).